Tab K. Rosenfeld (TR-9212)
Steven M. Kaplan (SK-4228)
Nicole E. Meyer (NM-2302)
ROSENFELD & KAPLAN, LLP
1180 Avenue of the Americas, Suite 1920
New York, NY 10036
(212) 682-1400
tab@rosenfeldlaw.com
steve@rosenfeldlaw.com
nm@rosenfeldlaw.com

*Attorneys for GPB Automotive Portfolio, LP, GPB
Holdings II, LP, and GPB Capital Holdings, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
BARBARA DELUCA and DREW R. NAYLOR,
on behalf of themselves and other similarly
situated limited partners,                                    Civ. Action No.: 1:19-cv-10498 (LAK)

                              Plaintiffs,

                         - against -

GPB AUTOMOTIVE PORTFOLIO, LP,
GPB HOLDINGS II, LP, GPB CAPITAL
HOLDINGS, LLC, ASCENDANCY
ALTERNATIVE STRATEGIES, LLC,
ASCENDANT CAPITAL, LLC, AXIOM
CAPITAL MANAGEMENT, INC.,
DAVID GENTILE, MARK MARTINO,
JEFFREY LASH, and JEFFREY SCHNEIDER

                              Defendants.
---------------------------------------------------------------- x


### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF GPB AUTOMOTIVE PORTFOLIO, LP, GPB HOLDINGS II, LP, AND GPB CAPITAL HOLDINGS, LLC TO DISMISS THE COMPLAINT

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...........................................................................................iii-v

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT.....................................................................................................................2

    I.      THE COMPLAINT MUST BE DISMISSED UNDER THE DOCTRINE OF
          *FORUM NON CONVENIENS* ...........................................................................2

    II.     IN THE ALTERNATIVE, THE ACTION SHOULD BE STAYED...............7

    III.    THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A
          CLAIM.................................................................................................................9

         A.  PLAINTIFFS HAVE FAILED TO STATE THEIR FRAUD CLAIMS.....9

         B.  PLAINTIFFS' BREACH OF CONTRACT CLAIMS MUST BE
            DISMISSED .................................................................................................13

         C.  PLAINTIFFS FAIL TO STATE THEIR UNJUST ENRICHMENT
            CLAIM..........................................................................................................14

CONCLUSION.................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                    **Page(s)**

2470 Cadillac Resources, Inc. v DHL Express (USA), Inc.
    84 A.D.3d 697, 923 N.Y.S.2d 530 (1st Dep't 2011) ...........................................................9

Agrotiki Viomichania Galaktos Ipirou Dodoni A.E. v. Fantis Foods, Inc.
    No. 14-CV-9179 (LAK), 2015 WL 1029651, (S.D.N.Y. Mar. 10, 2015) ..........................4

Anschutz Corp. v. Merrill Lynch & Co.
    690 F.3d 98 (2d Cir. 2012)....................................................................................................10

Arkwright-Boston Mfrs. Mut. Ins. Co. v. New York
    762 F.2d 205 (2d Cir. 1983)...................................................................................................8

Balanced Return Fund Ltd. v Royal Bank of Can.
    138 A.D.3d 542, 28 N.Y.S.3d 589 (1st Dep't 2016) ...........................................................12

Baosteel Am., Inc. v. M/V Ocean Lord
    257 F. Supp. 2d 687 (S.D.N.Y. 2013)....................................................................................5

Berger v. Apple REIT Ten, Inc.
    563 Fed Appx 81 (2d Cir. 2014) ..........................................................................................10

Bluefire Wireless Inc. v. Cloud9 Mobile Commc'ns., Ltd, Inc. v. Cloud9 Mobile Commc'ns,
Ltd.
    No. 09 Civ. 7268 (HB), 2009 WL 4907060 (S.D.N.Y. Dec. 21, 2009) ..............................5

Cobalt Partners, L.P. v GSC Capital Corp.
    97 A.D.3d 35, 944 N.Y.S.2d 30 (1st Dep't 2012) ..............................................................12

Colorado River Water Conservation Dist. v. United States
    424 U.S. 800 (1976)................................................................................................................8

Credit Suisse Secs. (USA) LLC v. Hilliard
    469 F. Supp. 2d 103 (S.D.N.Y. 2007)................................................................................3, 4

De Cisneros v. Younger
    871 F.2d 305 (2d Cir. 1989)...............................................................................................8, 9

Elghanian v. Harvey
    249 A.D.2d 206 (1st Dep't 1998) ........................................................................................12

First Keystone Consultants, Inc. v. Schlesinger Elec. Contrs., Inc.
    862 F. Supp. 2d 170 (E.D.N.Y. 2012) ..................................................................................8

Great Lakes Chem. Corp. v. Pharmacia Corp.
    788 A.2d 544, 2001 Del. Ch. LEXIS 85 ...................................................................14

Horvath v. Banco Comercial Portugues
    2011 U.S. Dist. LEXIS 15865, 2011 WL 666410 (S.D.N.Y. Feb. 15, 2011).....................6

Horvath v. Banco Comercial Portugues
    461 Fed. Appx. 61 (2d Cir. 2011).......................................................................7

In re Apple REITs Litig.
    2013 WL 1386202 (E.D.N.Y. Apr. 3, 2013) ...............................................10

In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.
    99 F. Supp. 3d 288 (E.D.N.Y. 2015) ...................................................................7

Joseph Sternberg, Inc. v. Walber 36th St. Assocs.
    187 A.D.2d 225 (1993) ...................................................................................15

Kelly v. Jefferies Grp., Inc.
    2018 U.S. Dist. LEXIS 26090 (S.D.N.Y. Feb. 15, 2018, No. 1:17-cv-2432 (ALC))........11

Kuhlman v. Tdp Capital Access
    2010 Mich. App. LEXIS 1361, 2010 WL 2793565  (July 15, 2010) .................................6

Leasing Service Corp. v. Graham
    646 F. Supp. 1410 1415 (S.D.N.Y 1986) ...........................................................6

Louis Vuitton Malletier S.A. v. LY USA, Inc.
    676 F.3d 83 (2d Cir. 2012)...................................................................................7

Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.
    2011 WL 1465744 (S.D.N.Y. Apr. 15, 2011)...................................................8

Mesirov v. Enbridge Energy Co., Inc.
    C.A. No. 11314-VCS, 2018 WL 4182204 (Del. Ch. Aug. 29, 2018)................................13

Modell's N.Y. v. Noodle Kidoodle
    242 A.D.2d 248, 662 N.Y.S.2d 24 (1st Dep't 1997) ...........................................9

Philippe NYC I LLC v. Philippe W. Coast, LLC
    2016 U.S. Dist. LEXIS 38513, 2016 WL 1183669 (S.D.N.Y. Mar. 23, 2016) ..................6

Phillips v. Audio Active Ltd.
    494 F.3d 378 (2d Cir. 2007)...................................................................................5

Presbyterian Healthcare Servs. v. Goldman, Sachs & Co.
     122 F. Supp. 3d 1157 (D.N.M. 2015) ...............................................................5

Protas v. Cavanagh
     2012 Del. Ch. LEXIS 88, 2012 WL 1580969  (Del. Ch.  May 4, 2012) ..........................14

Rattner v. Bd. of Trustees of Vill. of Pleasantville
     611 F. Supp. 648 (S.D.N.Y. 1985) .................................................................8

Stephenson v. PricewaterhouseCoopers, LLP
     482 F. App'x 618 (2d Cir. 2012) ..................................................................12

Tropical Sails Corp. v. Yext, Inc.
     No. 14 CIV. 7582 JFK, 2015 WL 2359098 (S.D.N.Y. May 18, 2015) ...........................15

Wang v. Bear Stearns Cos. LLC
     14 F. Supp. 3d 537 (S.D.N.Y. 2014)..............................................................11

Wilson v. Merrill Lynch & Co.
     671 F.3d 120 (2d Cir. 2011)......................................................................10

Younker v. GPB Capital Holdings, LLC, et al.
     Sup. Ct., N.Y. County, Index No. 15769/2019 ...............................................7, 8

## <u>PRELIMINARY STATEMENT</u>

Defendants GPB Automotive Portfolio, LP ("Automotive"), GPB Holdings II, LP ("Holdings II"), and GPB Capital Holdings, LLC ("GPB Capital," and together with Automotive and Holdings II, the "GPB Defendants") submit this reply memorandum of law in support of their motion to dismiss the putative Class Action Complaint (the "Complaint") of plaintiffs Barbara Deluca ("DeLuca") and Drew R. Naylor ("Naylor), on behalf of themselves and other similarly situated limited partners (collectively, the "Plaintiffs") as against the GPB Defendants.

As fully detailed in GPB Defendants' moving brief, the Complaint must be dismissed without reaching the merits of the claims under the doctrine of *forum non conveniens*, as there is a mandatory forum selection clause in the subscription agreements signed by Plaintiffs which applies to the asserted causes of action. In their opposition, Plaintiffs attempt to argue that the clause is merely permissive, does not cover their claims, and that it was not reasonably communicated. As discussed below, each of these arguments is without merit.

Alternatively, in the event the Court does not apply the forum selection clause and dismiss the Complaint, this action should be stayed in favor a prior-filed case pending in the Supreme Court of the State of New York, New York County which involves the same putative class. In the interests of judicial efficiency, and to avoid piecemeal litigation, the Court should exercise its discretion in granting a stay.

Should the Court, nonetheless, decide to consider the merits of Plaintiffs' claims, each of them as asserted against the GPB Defendants must be dismissed. Plaintiffs have failed to state fraud claims, either by misrepresentations or by omission, as the Complaint fails to allege reliance, none of the purported misstatements alleged therein are actionable, and Plaintiffs have failed to state the fiduciary duty required to sustain a claim of fraud by omission.

Contrary to Plaintiffs' assertion, the breach of contract claims may not be brought as direct claims, and therefore, must similarly be dismissed.  Plaintiffs have also failed to state an unjust enrichment claim against Automotive and Holdings II, nor does any plausible claim against these entities exist.  Lastly, the management fees collected by GBP Capital which form the basis of Plaintiffs' unjust enrichment claim against it fall plainly within the ambit of the limited partnership agreements, precluding Plaintiffs from asserting this quasi-contractual claim.

## ARGUMENT

### I.   THE COMPLAINT MUST BE DISMISSED UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*

Paragraph 40(b) of the Subscription Agreements executed by each of the investors in Automotive and Holdings II, including Plaintiffs, mandates that claims arising out of their purchase of their limited partnership interests be brought in the state courts of New York County. In their opposition, Plaintiffs attempt to downplay the importance of the forum selection clause, and address this point last, as they are aware it is fatal to their claims.  Plaintiffs cannot take issue with the existence of the forum selection clause and the fact that it mandates that any claim they assert be brought in state court.  Instead, they attempt to skirt its claimed import by arguing that this clause does not encompass their claims, that the clause is not exclusive, and that it was not reasonably communicated to investors.  Each of these arguments is without merit.

The forum selection clause at issue covers the claims asserted against the GBP Defendants.  The clause is broadly worded to cover "any litigation arising out of, under, or in connection with" the Subscription Agreement, the operative document through which the Plaintiffs obtained their interests in Automotive and Holdings II.

Plaintiffs attempt to skirt application by arguing that the Subscription Agreement is not the subject of their claims, but rather, that "Plaintiffs' claims actually arise from a different, later contract between the parties (the Limited Partnership Agreement), earlier marketing materials

2

(the PPMs, brochures, marketing one-pages, amongst other materials), and fraudulent conduct and materially false representations postdating the Subscription Agreement." (Opp. Brief, at p. 47)[1].  This argument is simply wrong.

Plaintiffs allege they were fraudulently induced to invest in Automotive and Holdings II as a result of misstatements and omissions in marketing materials on which they relied.   Simple logic dictates that any such reliance on purported misstatements would, by necessity, be contained in marketing materials received *prior* to signing the Subscription Agreements.  It is unclear how Plaintiffs could have been fraudulently induced to invest in the GPB Investments as a result of false representations *postdating* the Subscription Agreement.  Plaintiffs' argument conveniently ignores the fact that they invested in the GPB Investments through their entry into Subscription Agreements, and their investments in the GPB Investments are the crux of their fraud claims.  The fraud claims clearly arise in connection with Plaintiffs' entry into the Subscription Agreements, and their attempt to argue otherwise is fatuous.

Similarly, the unjust enrichment claim, which is based on the same underlying fraud allegations – namely, that the Plaintiffs were defrauded by defendants into investing into funds which defendants then used for their own benefit – for the same reasons as enunciated above, also arises out of Plaintiffs' entry into the Subscription Agreements.

Plaintiffs cite to Credit Suisse Secs. (USA) LLC v. Hilliard, 469 F. Supp. 2d 103, 107 (S.D.N.Y. 2007) for the proposition that a forum selection clause in one contract may not be applied to a separate agreement lacking such a clause, and argue that their claims arise out of the LPAs.  Opp. Brief, at p. 47.  In Hillard, the Court found that where the February 2005 contract containing the forum selection clause had expired by the time the August 2005 contract upon

---

[1] References to "Opp. Brief" are to Plaintiffs' Omnibus Brief in Opposition to Defendants' Motion to Dismiss.

which the plaintiff sued was executed, and the contracts were "separately negotiated," it would require too broad a reading of "arising out of" and "related to" to apply the forum selection clause to the August 2005 contract. Unlike Hilliard, this action does not involve separately negotiated contracts executed at different times, but contracts which are inextricably intertwined.[2] In the Subscription Agreement (Bergenfeld Decl.[3] Ex. C and D, at p. 7), each investor stated as follows:

> By signing the Agreement, the undersigned subscriber (the "Subscriber") confirms acceptance of the Company's offer of Units on the terms and conditions set out in . . . the Company's Amended & Restated Agreement of Limited Partnership included in the memorandum, as it may be amended from time to time (the "LPA").

The Plaintiffs also agreed by virtue of the Subscription Agreement "to be admitted as an LP of the Company and to be bound by all of the terms and conditions of the LPA," which was provided to investors simultaneously with the Subscription Agreement. Bergenfeld Decl. Ex. C and D, page 7, 10, ¶ 19. Indeed, the Plaintiffs did not individually sign the LPAs (see Bergenfeld Decl. Ex. E, p. 51), but instead, pursuant to paragraph 26 of the Subscription Agreements, each agreed to irrevocably appoint GPB Capital as attorney-in-fact to enter into the LPA and all amendments or restatements of the LPA. Bergenfeld Decl. Ex. C and D, page 11, ¶ 26. The relationship between the Plaintiffs and the GPB Defendants arises out of the Subscription Agreements, and any rights Plaintiffs have under the LPAs derive from their execution of the

---

[2] Agrotiki Viomichania Galaktos Ipirou Dodoni A.E. v. Fantis Foods, Inc., No. 14-CV-9179 (LAK), 2015 WL 1029651, at *3 (S.D.N.Y. Mar. 10, 2015)(cited at Opp. Brief, at p. 46-47) is likewise distinguishable. In Agrotiki, the Court found that the plaintiff's federal trademark infringement and counterfeiting claims were not within the scope of the forum selection clause where the "ownership of the marks does not originate in the contract" and the contract had a narrow forum selection clause covering disputes "dispute arising from the enforcement and operation of this agreement." In this case, plaintiffs' ownership of the limited partnership interests originates in the Subscription Agreements, which have a far broader forum selection clause covering any dispute arising in connection with the Subscription Agreement.
[3] References to "Bergenfeld Decl." are to the Declaration of Jennifer Bergenfeld submitted in support of the GPB Defendants' motion to dismiss. (D.E. 60-1).

4

Subscription Agreements.  Thus, the forum selection clause applies to each of plaintiffs' claims stemming from their investments.  Bluefire Wireless Inc. v. Cloud9 Mobile Commc'ns., Ltd, Inc. v. Cloud9 Mobile Commc'ns, Ltd., No. 09 Civ. 7268 (HB), 2009 WL 4907060, at *3 (S.D.N.Y. Dec. 21, 2009).  Significantly, while claiming that their claims do not arise out of or are not "in connection with" the SPAs, Plaintiffs purport to seek as relief for each of their claims "rescission" of the SPAs.  Opp. Brief, at 38, 40, 43-44; Bergenfeld Decl. Ex B, p. 2.  The Plaintiffs cannot have it both ways: the fact that Plaintiffs seek such relief simply evidences their recognition of the inextricably relationship between the Subscription Agreements the LPAs and the application of the forum selection clause.

Nor is there any merit to Plaintiffs' attempt to argue that the forum selection clause is, by its terms, permissive.  Unlike a permissive forum clause which "only confers jurisdiction in the designated forum, but does not deny plaintiff his choice of forum, if jurisdiction there is otherwise appropriate," the forum selection clause here contains "obligatory venue language." Phillips v. Audio Active Ltd., 494 F.3d 378, 386 (2d Cir. 2007).

Plaintiffs cite to Presbyterian Healthcare Servs. v. Goldman, Sachs & Co., 122 F. Supp. 3d 1157, 1191 (D.N.M. 2015), a District of New Mexico case, quoting language that states mandatory language includes "such terms as 'exclusive,' 'sole,' or 'only.'" Opp. Brief at 49. However, Courts in this District have made clear that "exclusive jurisdiction can be granted to a forum without the use of specific language of exclusion (e.g., 'only', 'solely', or 'exclusively')." See e.g., Baosteel Am., Inc. v. M/V Ocean Lord, 257 F. Supp. 2d 687, 689 (S.D.N.Y. 2013).

Plaintiffs fail to cite to a single case in which the Court found a forum clause similar to the one found in the Subscription Agreement to be permissive.  In fact, this Court and others have enforced as mandatory forum selection clauses providing that venue "will lie in" a specified forum.  Leasing Service Corp. v. Graham, 646 F. Supp. 1410, 1415 (S.D.N.Y 1986)(enforcing

forum selection clause in "leases specify[ing] that jurisdiction and venue will lie in New York");

Kuhlman v. Tdp Capital Access, 2010 Mich. App. LEXIS 1361, *9, 2010 WL 2793565  (July

15, 2010) ("we find that the phrase 'will lie in,' as set forth in the contractual provision in this

case, provides a mandatory provision and not a permissive one").

    Plaintiffs' argument that the forum selection clause was not reasonably communicated is

likewise without basis.  Plaintiff Naylor concedes that the Subscription Agreement Terms and

Conditions were received (Opp. Brief. at 53) and does not dispute that his spouse signed the

Subscription Agreement; Naylor thus has no basis to claim that the forum selection clause was

not reasonably communicated.  With respect to plaintiff DeLuca, Plaintiffs attempt to call into

question the authenticity of the Subscription Agreement attached as Exhibit C to the Bergenfeld

Decl. based upon DeLuca's allegations that she does not recall receiving the Terms and

Conditions of the Subscription Agreement and has been unable to locate a copy of the form she

signed in her files or emails.  DeLuca Decl. ¶¶ 5-7.  At the same time, she admits that she recalls

signing the form sent by her broker and "immediately sending it back to my broker by *FedEx*"

and further concedes it is her signature on the Subscription Agreement.  DeLuca Decl. ¶¶ 5, 7.

    Regardless of whether DeLuca claims to have not read the Subscription Agreement or

remember its terms, "[i]t is basic contract law that a person who signs a contract is presumed to

know its terms and consents to be bound, and that failure to read a contract is no excuse."

Philippe NYC I LLC v. Philippe W. Coast, LLC, 2016 U.S. Dist. LEXIS 38513, *19, 2016 WL

1183669 (S.D.N.Y. Mar. 23, 2016)("Defendants' contention that the forum selection clause was

not reasonably communicated to Mr. Halley because he neither read it nor was informed of it

when he signed the agreement . . . is meritless."); see also Horvath v. Banco Comercial

Portugues, 2011 U.S. Dist. LEXIS 15865, *12-13, 2011 WL 666410 (S.D.N.Y. Feb. 15, 2011)

aff'd 461 Fed. Appx. 61 (2d Cir. 2011) (the "fact that Plaintiff now alleges that he does not

remember receiving a copy of the agreement does not mean the forum selection clause was not reasonably communicated to him").

The forum selection clause in the Subscription Agreements is clear and unambiguous, is contained in the operative document that Plaintiffs signed in order to obtain their limited partnership interests, and was plainly communicated to them. It should be enforced.

## II.   IN THE ALTERNATIVE, THE ACTION SHOULD BE STAYED

In the event the Court does not dismiss the Complaint based on the doctrine of *forum non conveniens*, the Court should exercise its discretion to stay this action in favor of the prior-filed state action entitled: Younker v. GPB Capital Holdings, LLC, et al., Sup. Ct., N.Y. County, Index No. 15769/2019.

Plaintiffs' reliance on In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig., 99 F. Supp. 3d 288, 314 (E.D.N.Y. 2015)(Opp. Brief, at p. 54) offers no support for their position that a stay should not be granted. In that case, the Court declined to stay a federal action in favor of a parallel state court action which was in the settlement approval process. There, the Court found that there had been "nearly two years of extensive discovery and motion practice in federal Court," the risk of "duplicative discovery" was a "product of HSBC's own making," and there was little risk of waste of judicial resources given the near-completion of discovery. As a result, the Court determined that abstention was not warranted. Here, by contrast, the federal action is in its incipiency, and there is a considerable risk of duplicative discovery as well as waste of judicial resources. Plaintiffs also cite to Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 97 (2d Cir. 2012)(Opp. Brief at p. 54), a case which examines the issue of staying a civil proceeding in favor of an overlapping criminal investigation, and has no applicability here.

Plaintiffs assert that the GPB Defendants have overlooked the decision in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976)(Opp. Brief at p. 54-55),

which is not the case.[4]  Plaintiffs fail to address De Cisneros v. Younger, 871 F.2d 305, 309 (2d Cir. 1989)(Moving Brief[5] at p. 15), which, in applying the six-factor framework established by Colorado River and its progeny, based its determination to affirm abstention on the factor that considers "avoidance of piecemeal litigation."  Finding that a real potential exists for "inconsistent and mutually contradictory determinations," the Court affirmed the district Court's decision to abstain from the exercise of its jurisdiction.  De Cisneros, 871 F.2d at 309.[6]

Similarly, in First Keystone Consultants, Inc. v. Schlesinger Elec. Contrs., Inc., 862 F. Supp. 2d 170, 189 (E.D.N.Y. 2012), the Court, noting the paramount importance of the factor of "avoidance of piecemeal adjudication" and that the "risk of piecemeal adjudication is especially great where a party in one lawsuit is absent from the other," found this factor to weigh strongly in favor of abstention.  See also Arkwright-Boston Mfrs. Mut. Ins. Co. v. New York, 762 F.2d 205, 211 (2d Cir. 1983)(" The existence of such concurrent proceedings creates the serious potential for spawning an unseemly and destructive race to see which forum can resolve the same issues first [which would be] prejudicial, to say the least, to the possibility of reasoned decisionmaking by either forum.").

---

[4] Plaintiffs also assert that two cases cited in GPB Defendants' moving brief, Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd., 2011 WL 1465744 (S.D.N.Y. Apr. 15, 2011) and Rattner v. Bd. of Trustees of Vill. of Pleasantville, 611 F. Supp. 648, 654 (S.D.N.Y. 1985), are inapposite.  Opp. Brief, at p. 54-55.  Plaintiffs argue that unlike Rattner, where the state action had substantially progressed, the Younger case has not progressed, and no discovery has been exchanged.  However, here, both cases are in their incipiency and have not yet entered the discovery phase; thus, there is likely to be duplicative discovery absent a stay.  Moreover, contrary to Plaintiffs' contention, the independent proceedings need not be "controlling" for the Court to enter a stay, but a stay may be appropriate where the outcome of a proceeding will  have a "significant bearing" on the instant case.  Maritima de Ecologia, supra.

[5] References to "Moving Brief" are to the Memorandum of Law submitted in support of the GPB Defendants' motion to dismiss. (D.E. 60-9).

[6] The Court also noted that abstention is favored where "where the bulk of the litigation would necessarily revolve around the state-law . . . rights of [numerous] . . . . parties" (Id.)(internal citations omitted), which is the case here.

Just as in <u>De Cisneros</u>, "reasons of wise judicial administration favor abstention in this case in order to avoid duplicative simultaneous litigation." <u>De Cisneros</u>, 871 F.2d 308 (internal citations omitted).

### III.   THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

While the Court need not reach the merits of Plaintiffs' claims due to doctrine of *forum non conveniens*, nonetheless, each of Plaintiffs' claims must be dismissed under Rule 12(b)(6) for failure to a state a claim.

### A.   <u>Plaintiffs Have Failed to State their Fraud Claims</u>

Plaintiffs have failed to allege actionable misrepresentations or omissions by the GPB Defendants upon which they relied to their detriment, mandating dismissal of the fraud claims (Counts I and II) as against the GPB Defendants.

While attributing the purported misrepresentations to the various "PPMs," absent from the Complaint is any allegation that the plaintiffs read the PPMs, and particularly, the purported misstatements therein, or that they did in fact rely on these statements in deciding to invest in Automotive and Holdings II. <u>Modell's N.Y. v. Noodle Kidoodle</u>, 242 A.D.2d 248, 250, 662 N.Y.S.2d 24, 26 (1st Dep't 1997); <u>2470 Cadillac Resources, Inc. v DHL Express (USA), Inc.</u>, 84 A.D.3d 697, 698, 923 N.Y.S.2d 530, 532 (1st Dep't 2011)("The fifth cause of action, for fraud, fails to allege that plaintiffs relied on any misrepresentations made by DHL.").  Plaintiffs' failure to plead reliance is fatal to their fraud claims.

Additionally, the so-called misstatements in the PPMs are not actionable, as they constitute forward-looking statements of corporate optimism, mere puffery, or are the subject of explicit disclosures.

Plaintiffs' claim that the defendants misrepresented that distributions would be made based exclusively on cash flows from dealership operations is directly contradicted by the PPMs, which disclosed that special distributions involving return of capital could occur.  Such disclosure precludes a finding that the PPMs made misstatements as to distributions.  See Truitt Decl.[7] Ex. 5, pp. 12, 29;  In re Apple REITs Litig., 2013 WL 1386202 (E.D.N.Y. Apr. 3, 2013), *aff'd in part*, *vacated in part sub nom.* Berger v. Apple REIT Ten, Inc., 563 Fed Appx 81 (2d Cir. 2014).

Plaintiffs' attempt to distinguish the Apple REIT case is misguided.  Plaintiffs argue that in Apple REIT, "the court found the only factual allegation supporting the plaintiffs' conclusory assertion that the defendants failed to follow their stated distribution policy was that the company regularly paid out 7-8% distributions."  (Opp. Brief at p. 31).  To the contrary, the District Court in Apple REIT examined a similar disclosure in a prospectus as is at issue herein.  In holding the disclosure not to be misleading, the Court rejected the plaintiff's argument that the defendants' "disclosure that they 'may from time to time distribute funds that include a return of capital' was misleading because, in fact, it was 'a certainty that distributions would always be sourced by funds other than operating income.'"  In re Apple REITs Litig., 2013 WL 1386202.  Instead, the Court held that the disclosure that something "may" happen points to the likelihood of it happening, and did not constitute a misstatement, citing to Wilson v. Merrill Lynch & Co., 671 F.3d 120, 133 (2d Cir. 2011) and Anschutz Corp. v. Merrill Lynch & Co., 690 F.3d 98, 109 (2d Cir. 2012), which involved similar disclosures.  Similar to these cases, the disclosure precludes a finding that Plaintiffs were misled.

---

[7] References to "Truitt Decl." are to the Declaration of Alexander A. Truitt (D.E. 62-3).

The alleged misrepresentations in the PPMs concerning the GPB Investments' planned strategy of acquiring Dealerships presenting attractive medium-to-long-term returns, and the representation that the GPB Investments were safe, "Sustainable" investments (Opp. Brief at p. 7-11) are forward-looking statements of corporate optimism, and were in no way guaranteed in the PPMs.  Wang v. Bear Stearns Cos. LLC, 14 F. Supp. 3d 537, 545 (S.D.N.Y. 2014) (surveying examples of mere optimistic statements found to not be actionable misrepresentations where speaker did not provide "guarantees or . . . specific statements of fact").  The statements as to GPB Capital's experience and the advantages of the equity fund model  (Opp. Brief at p. 11-13) are likewise unactionable puffery.  Kelly v. Jefferies Grp., Inc., 2018 U.S. Dist. LEXIS 26090, *24 (S.D.N.Y. Feb. 15, 2018, No. 1:17-cv-2432 (ALC))(holding the following purported misrepresentations to be unactionable puffery: "Defendants recommended Palmaz as 'safe, low risk investment which would lead to significant profits for Plaintiff' and "Defendants represented that Palmaz were 'unrivaled experts in creating and selling state-of-the-art technology'").[8]

Rather than containing guarantees, the PPMs contain disclosures as to the risks of the GPB Investments which go to the heart of the purported misrepresentations.  The PPMs specifically caution that distributions to limited partners could not be guaranteed. Truitt Decl. Ex. 4, p. 12, 48; Ex. 5, p. 4, 28.  The PPMs additionally disclose that GPB Capital cannot guarantee they will be able to successfully acquire automotive dealerships, which are subject to restrictions by manufacturers.  Truitt Decl. Ex. 4, pp. 37; Ex. 5, pp. 38.  While expressing optimistic statements as to the belief that the business plan would be sustainable and produce long-term and

---

[8] Moreover, Plaintiffs' claims that the GPB Defendants did not have experience in the automotive industry are contradicted by their own pleadings, which acknowledge that Lash, Dibre, and Rosenberg each owned and operated automotive dealerships prior to joining GPB Capital. See Bergenfeld Decl., Ex. B, ¶14.

steady returns for limited partners, the PPMs contain detailed forward-looking statements and pages of disclosures concerning the risks inherent to the automotive industries and particularly to the investments, which had limited operating history.  See Truitt Decl., Ex. 4, pp. 3, 9, 34-39, 44-46; Ex. 5, pp. 4, 7-8, 34-40, 46-51.

With respect to Plaintiffs' allegations that the GPB Defendants misrepresented that their financial statements complied with GAAP (Opp. Brief, at p. 13), just as in Stephenson v. PricewaterhouseCoopers, LLP, 482 F. App'x 618, 623 (2d Cir. 2012), cited by Plaintiffs (Opp. Brief, at p. 26), Plaintiffs have failed to pled the requisite fraudulent intent to deceive by the GPB Defendants through the financial statements prepared by their independent accountants.

The purported misrepresentations may not serve as a basis for Plaintiffs' fraud claims.

With respect to the fraud by omission claims, the law is clear, and Plaintiffs acknowledge, that "an omission does not constitute fraud unless there is a fiduciary relationship between the parties." Cobalt Partners, L.P. v GSC Capital Corp., 97 A.D.3d 35, 42, 944 N.Y.S.2d 30, 35 (1st Dep't 2012).  Plaintiffs, asserting that general partners owe fiduciary duties to their limited partners, attempt to argue that "once Plaintiffs became Limited Partners, there was a fiduciary relationship between the parties."  Opp. Brief at p. 35.  In support of that statement, Plaintiffs inexplicably rely on Elghanian v. Harvey, 249 A.D.2d 206 (1st Dep't 1998), a case also relied on by GPB Defendants (Moving Brief at p. 19), in which the Court found there was "no fiduciary relationship giving rise to a duty to speak."  In making that determination, the Court stated that "the requisite relationship between the parties must have existed *prior* to the transaction from which the alleged wrong emanated, and not as a *result* of it." Id. at 206 (emphasis added); see also Balanced Return Fund Ltd. v Royal Bank of Can., 138 A.D.3d 542, 542, 28 N.Y.S.3d 589, 589 (1st Dep't 2016).  Plaintiffs cannot claim to have a fiduciary relationship with the GBP Defendants which came about as a result of the transaction on which

they base their claim – their investment into Automotive and Holdings II.  As no fiduciary relationship has been alleged by the Plaintiffs, there was no duty to speak, and the fraud by omission claims must be dismissed.

Plaintiffs have failed to state actionable fraud claims as against the GPB Defendants, and accordingly, Counts I and II must be dismissed as against them.

**B. Plaintiffs' Breach of Contract Claims Must be Dismissed**

Plaintiffs' argument that their breach of contract claims are direct has no legal basis.  The Plaintiffs, citing to Mesirov v. Enbridge Energy Co., Inc., C.A. No. 11314-VCS, 2018 WL 4182204, at *9 (Del. Ch. Aug. 29, 2018), acknowledge that for their claim to be direct, they "must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation."  Opp. Brief at p. 43.  Mesirov is the very case cited in the GPB Defendants' moving brief (see Moving Brief, at p. 22) which held that a breach of a contract provision that provided that in a conflicted transaction, the General Partner "has a duty to act in a manner that is fair and reasonable to the Partnership" could not be brought directly.  Likewise, Plaintiffs' claim in Count III of a purported breach of the LPAs' provision that the Advisory Committee review related party transactions to determine in if they are "in the best interest of the Partnership" cannot be brought directly, as the duty was owed to Automotive and Holdings II, not their limited partners.

Plaintiffs' assertion that the purported breaches concerning the related party transactions (Count III) and the alleged "improper distributions" (Count IV) caused harm to Plaintiffs directly because of the decrease and then cessation of distributions (Opp. Brief at p. 43) is unsupportable. With respect to actions that "deplete corporate assets that might otherwise be used to benefit the stockholders, such as through a dividend, these harms are merely the unavoidable result . . . of the reduction in the value of the entire corporate entity, of which each share of equity represents

an equal fraction." <u>Protas v. Cavanagh</u>, 2012 Del. Ch. LEXIS 88, *19, 2012 WL 1580969  (Del. Ch.  May 4, 2012).  The direct "harm" caused by any purportedly improper related party transactions and distributions would be to Automotive and Holdings II by virtue of the depletion of their capital, and the limited partners would be only indirectly harmed; thus the claims may not be brought directly.

Lastly, Plaintiffs misconstrue the GPB Defendants' argument that Plaintiffs have failed to allege damages stemming from GPB Capital's purported breach of its obligation to provide financial reports, asserting that they need not "quantify" their monetary damages.  Opp. Brief. at p. 44.  Plaintiffs have not stated any way in which they were *injured* as a result of purportedly not receiving the audited financials, a necessary element of their claim.  <u>Great Lakes Chem. Corp. v. Pharmacia Corp.</u>, 788 A.2d 544, 549, 2001 Del. Ch. LEXIS 85, *13  ("An essential element of any claim for breach of contract is cognizable injury.").

Plaintiffs' contract claims must be dismissed as against the GPB Defendants.

### C.  <u>Plaintiffs Fail to State their Unjust Enrichment Claim</u>

Plaintiffs' unjust enrichment claim is based on the collection of purportedly unearned compensation fees by the defendants.  As set forth in the GPB Defendants' moving papers, there are no allegations in the Complaint that any compensation or management fees were taken by Automotive or Holdings II.  Plaintiffs' opposition fails to address this glaring deficiency, as there is no plausible basis for an unjust enrichment claim against these entities.  Accordingly, the unjust enrichment claim must be dismissed against Automotive or Holdings II.

With respect to GPB Capital, the management fees received by it were pursuant to an explicit term in the LPAs (Bergenfeld Decl. E, F, ¶ 3.13) which covers the exact fees that were alleged to be taken improperly.  Plaintiffs cite a number of cases (Opp. Brief at p. 37-39, citing, <u>e.g.</u>, <u>Tropical Sails Corp. v. Yext, Inc.</u>, No. 14 CIV. 7582 JFK, 2015 WL 2359098, at *7

(S.D.N.Y. May 18, 2015) for the proposition that an unjust enrichment claim may proceed despite the existence of a contract between the parties where the complained-of conduct falls outside the scope of that contract.  This is not the case here.  The management fees collected by GPB Capital are squarely and directly covered by the LPAs.  Plaintiffs' reliance on <u>Joseph Sternberg, Inc. v. Walber 36th St. Assocs.</u>, 187 A.D.2d 225, 227-228 (1993), a case concerning a dispute over commission fees to be paid to a real estate broker, is easily distinguishable.  In <u>Joseph Sternberg</u>, the applicable contract provided for the sale of property for $11.5 million with plaintiff's $450,000 commission to be paid by defendant, but the transaction ultimately closed at a reduced purchase price of $10.6 million.  The Court held that because the "contract at issue here is silent as to plaintiff's entitlement to a commission in the event a sale of the building occurred for a lesser price," the contract did not preclude plaintiff from proceeding on a theory of quantum meruit.   Here, there is no question that the LPAs cover the exact "managerial assistance fee" collected by GPB Capital in accordance with LPA ¶ 3.13.

## <u>CONCLUSION</u>

For the foregoing reasons and those set forth in the GPB Defendants' moving papers, the Complaint should be dismissed as against the GBP Defendants based on the application of the forum selection clause; alternatively, should the Court determine that it has jurisdiction to hear the case, it should stay the matter in deference to the prior pending state court actions.  Finally, should the Court decide to proceed with this matter, Plaintiffs have nonetheless failed to state an actionable claim against the GPB Defendants and, accordingly, the Complaint should be dismissed in its entirety.

Dated: New York, New York
       March 9, 2020

                                    **ROSENFELD & KAPLAN, LLP**

                          By:    *Tab K Rosenfeld*
                                 _____
                                 Tab K. Rosenfeld
                                 Steven M. Kaplan
                                 Nicole E. Meyer
                                 1180 Avenue of the Americas, Suite 1920
                                 New York, NY 10036
                                 (212) 682-1400
                                 *Attorneys for defendants GPB Automotive Portfolio,*
                                 *LP, GPB Holdings II, LP, and GPB Capital*
                                 *Holdings, LLC*