IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
BARBARA DELUCA and DREW R. NAYLOR,
on behalf of themselves and other similarly
situated limited partners,

                      Plaintiffs,

      v.

GPB AUTOMOTIVE PORTFOLIO, LP,
GPB HOLDINGS II, LP,
GPB CAPITAL HOLDINGS, LLC,
ASCENDANCY ALTERNATIVE
STRATEGIES, LLC, ASCENDANT
CAPITAL, LLC, AXIOM CAPITAL
MANAGEMENT, INC., DAVID
GENTILE, MARK MARTINO,
JEFFREY LASH, and JEFFREY
SCHNEIDER,

                      Defendants,
------------------------------------------------------------------X

Docket No.: 19-cv-10498

_____

**DEFENDANTS JEFFRY SCHNEIDER AND ASCENDANT CAPITAL, LLC'S REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**
_____

**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7th Floor
New York, NY   10017
(212) 655-3500

*Attorneys for Jeffry Schneider and
Ascendant Capital, LLC*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT ......................................................................................................................................... 2

    I.   THE COMPLAINT MUST BE DIMISSED UNDER THE DOCTRINE OF *FORUM NON CONVBENIENS*.................................................................................................... 2

    II.  IN THE ALTERNATIVE, THE ACTION SHOULD BE STAYED ........................... 7

    III. THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM............................................................................................................................... 9

        A.  Plaintiffs Have Failed to State their Fraud Claims ..................................................... 9

        B.  Plaintiffs' Aiding and Abetting Claims Must be Dismissed ................................. 12

        C.  Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law ............................. 14

CONCLUSION................................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases** Page(s)

*2470 Cadillac Resources, Inc. v DHL Express (USA), Inc.*,
  84 A.D.3d 697 (1st Dep't 2011) ............................................................................................ 9

*Agrotiki Viomichania Galaktos Ipirou Dodoni A.E. v. Fantis Foods, Inc.*,
  2015 WL 1029651 (S.D.N.Y. Mar. 10, 2015) ....................................................................... 4

*Anschutz Corp. v. Merrill Lynch & Co.*,
  690 F.3d 98 (2d Cir. 2012) .................................................................................................. 10

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*,
  762 F.2d 205 (2d Cir. 1983) .................................................................................................. 8

*Balanced Return Fund Ltd. v Royal Bank of Canada*,
  138 A.D.3d 542 (1st Dep't 2016) ........................................................................................ 12

*Baosteel Am., Inc. v. M/V Ocean Lord*,
  257 F. Supp. 2d 687 (S.D.N.Y. 2013) ................................................................................... 5

*Bluefire Wireless Inc. v. Cloud9 Mobile Commc'ns, Ltd.*,
  2009 WL 4907060 (S.D.N.Y. Dec. 21, 2009) ....................................................................... 5

*Cobalt Partners, L.P. v GSC Capital Corp.*,
  97 A.D.3d 35 (1st Dep't 2012) ............................................................................................ 12

*Credit Suisse Secs. (USA) LLC v. Hilliard*,
  469 F. Supp. 2d 103 (S.D.N.Y. 2007) ............................................................................... 3, 4

*De Cisneros v. Younger*,
  871 F.2d 305 (2d Cir. 1989) .................................................................................................. 8

*Elghanian v. Harvey*,
  249 A.D.2d 206 (1st Dep't 1998) ........................................................................................ 12

*First Keystone Consultants, Inc. v. Schlesinger Elec. Contrs.*, Inc.,
  862 F. Supp. 2d 170 (E.D.N.Y. 2012) ................................................................................... 8

*Horvath v. Banco Comercial Portugues*,
  2011 WL 666410 (S.D.N.Y. Feb. 15, 2011) ......................................................................... 6
  *aff'd* 461 Fed Appx 61 (2d Cir. 2011) ................................................................................... 6

*In re Apple REITs Litig.*,
  2013 WL 1386202 (E.D.N.Y. Apr. 3, 2013) ............................................................................. 10
  *aff'd in part, vacated in part sub nom. Berger v. Apple REIT Ten, Inc.*,
    563 Fed Appx 81 (2d Cir. 2014) ......................................................................................... 10

*In re BISYS Secs. Litig.*,
  397 F. Supp. 2d 430 (S.D.N.Y. 2005) ..................................................................................... 13

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*,
  99 F. Supp. 3d 288 (E.D.N.Y. 2015) ......................................................................................... 7

*In re Refco Inc. Sec. Litig.*,
  2012 WL 3126834 (S.D.N.Y. July 30, 2012) ......................................................................... 13
  *aff'd sub nom. Krys v. Pigott*,
    749 F.3d 117 (2d Cir. 2014) ................................................................................................ 13

*Kelly v. Jefferies Grp., Inc.*,
  No. 1:17-cv-2432, 2018 U.S. Dist. LEXIS 26090, (S.D.N.Y. Feb. 15, 2018) ........................ 11

*Kuhlman v. TDP Capital Access, LLC*,
  2010 WL 2793565 (July 15, 2010) ........................................................................................... 5

*Law Debenture v. Maverick Tube Corp.*,
  2008 WL 4615896 (S.D.N.Y. Oct. 15, 2008) ......................................................................... 14
  *aff'd sub nom. Law Debenture Tr. Co. of New York v. Maverick Tube Corp.*,
    595 F.3d 458 (2d Cir. 2010) ................................................................................................ 15

*Leasing Service Corp. v. Graham*,
  646 F. Supp. 1410 (S.D.N.Y. 1986) .......................................................................................... 5

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006) ................................................................................................... 13

*Magi XXI, Inc. v. Stato della Citta del Vaticano*,
  714 F.3d 714 (2d Cir. 2013) ..................................................................................................... 7

*Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*,
  2011 WL 1465744 (S.D.N.Y. Apr. 15, 2011) .......................................................................... 8

*Modell's N.Y., Inc. v. Noodle Kidoodle, Inc.*,
  242 A.D.2d 248 (1st Dep't 1997) ............................................................................................. 9

*Natl. Westminster Bank v. Weksel*,
  124 A.D.2d 144 (1st Dep't 1987) ........................................................................................... 14

*Orlan v. Spongetech Delivery Sys., Inc., Sec. Litig.*,
  2012 WL 1067975 (E.D.N.Y. Mar. 29, 2012) ........................................................................ 13

*Philippe NYC I LLC v. Philippe W. Coast, LLC*,
  2016 WL 1183669 (S.D.N.Y. Mar. 23, 2016) .................................................................. 6

*Phillips v. Audio Active Ltd.*,
  494 F.3d 378 (2d Cir. 2007) ............................................................................................ 5

*Presbyterian Healthcare Servs. v. Goldman, Sachs & Co.*,
  122 F. Supp. 3d 1157 (D.N.M. 2015) .............................................................................. 5

*Ramos v. Ramirez*,
  31 A.D.3d 294 (1st Dep't 2006) .................................................................................... 13

*Rattner v. Bd. of Trustees of Vil. of Pleasantville*,
  611 F. Supp. 648 (S.D.N.Y. 1985) .................................................................................. 8

*Ryan v. Hunton & Williams*,
  2000 WL 1375265 (E.D.N.Y. Sept. 20, 2000) .............................................................. 14

*Stephenson v. PricewaterhouseCoopers, LLP*,
  482 Fed Appx 618 (2d Cir. 2012) ................................................................................. 11

*VTech Holdings Ltd. v. PriceWaterhouseCoopers LLP*,
  348 F. Supp. 2d 255 (S.D.N.Y.2004) ............................................................................ 14

*Wang v. Bear Stearns Cos. LLC*,
  14 F. Supp. 3d 537 (S.D.N.Y. 2014) ............................................................................. 10

*Weingard v. Telepathy, Inc.*,
  2005 WL 2990645 (S.D.N.Y. Nov. 7, 2005) ................................................................... 7

*Wilson v. Merrill Lynch & Co.*,
  671 F.3d 120 (2d Cir. 2011) .......................................................................................... 10

**PRELIMINARY STATEMENT**

Defendants Jeffry Schneider ("Schneider") and Ascendant Capital, LLC ("Ascendant Capital" and collectively with Schneider, the "Ascendant Capital Defendants") submit this reply memorandum of law in further support of their motion to dismiss the putative Class Action Complaint (the "Complaint") of plaintiffs Barbara Deluca ("DeLuca") and Drew R. Naylor ("Naylor), on behalf of themselves and other similarly situated limited partners (collectively, the "Plaintiffs") as against the Ascendant Capital Defendants.[1]

The Complaint must be dismissed without reaching the merits of the claims under the doctrine of *forum non conveniens*, as there is mandatory forum selection clause in the subscription agreements signed by Plaintiffs which applies to the asserted causes of action. This forum selection clause requires that these claims be brought exclusively in the New York State courts venued in New York County. Plaintiffs' attempts to argue that the clause is merely permissive, does not cover their claims, and that it was not reasonably communicated hold no weight.

Alternatively, in the event the Court does not apply the forum selection clause and dismiss the Complaint, this action should be stayed in favor a prior-filed case pending in the Supreme Court of the State of New York, New York County which involves the same putative class. Given the interests of judicial efficiency, and to avoid piecemeal litigation, the Court should exercise its discretion in granting a stay.

Should the Court, nonetheless, decide to consider the merits of Plaintiffs' claims, each of them as asserted against the Ascendant Capital Defendants must be dismissed. Plaintiffs have failed to state fraud claims, either by misrepresentations or by omission, as the Complaint fails to

---

[1] The Ascendant Capital Defendants hereby incorporate by reference any and all applicable arguments made by the other Defendants in their respective Reply memoranda, filed concurrently herewith.

allege reliance, none of the purported misstatements alleged therein are actionable, and Plaintiffs have failed to state the fiduciary duty required to sustain a claim of fraud by omission.

Likewise, Plaintiffs' aiding and abetting fraud claims against Ascendant Capital fail as a matter of law as Plaintiffs have not alleged those claims with the requisite particularity and, instead, merely rely on impermissible group pleading.

Lastly, Plaintiffs have failed to state an unjust enrichment claim against the Ascendant Capital Defendants as the management fees that form the basis of Plaintiffs' unjust enrichment claim are squarely and clearly covered by a provision in the partnership agreements, thereby precluding this quasi-contractual claim, even as to third parties.

## ARGUMENT

### I. THE COMPLAINT MUST BE DISMISSED UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*

Paragraph 40(b) of the Subscription Agreements executed by each of the investors in Automotive and Holdings II, including Plaintiffs, mandates that claims arising out of their purchase of their limited partnership interests be brought in the state courts of New York County. In their opposition, Plaintiffs attempt to downplay the importance of the forum selection clause, and address this point last, as they are aware it is fatal to their claims and mandates dismissal of the Complaint without addressing the merits of their claims. Plaintiffs argue that their claims are not within the scope of the forum selection clause, that the clause is not exclusive, and that it was not reasonably communicated to investors. Each of these arguments fails, as set forth below.

The forum selection clause at issue covers the claims and the parties involved in the claims asserted against the Ascendant Capital Defendants. The clause is broadly worded, covering "any litigation arising out of, under, or in connection with" the Subscription Agreement, the operative document through which the Plaintiffs obtained their interests in Automotive and Holdings II.

Plaintiffs attempt to argue that the Subscription Agreement is not the subject of their claims, asserting "Plaintiffs' claims actually arise from a different, later contract between the parties (the Limited Partnership Agreement), earlier marketing materials (the PPMs, brochures, marketing one-pages, amongst other materials), and fraudulent conduct and materially false representations postdating the Subscription Agreement." (Opp. Brief, at p. 47).[2] This argument is without merit.

Plaintiffs allege they were fraudulently induced to invest in Automotive and Holdings II as a result of misstatements and omissions in marketing materials on which they relied to their detriment. In order to rely on such purported misstatements, they necessarily would be contained in marketing materials received *prior* to signing the Subscription Agreements. It is unclear how Plaintiffs could have been fraudulently induced to invest in the GPB Investments as a result of false representations *postdating* the Subscription Agreement. Plaintiffs' argument ignores the fact that they invested in the GPB Investments through their entry into Subscription Agreements, and their investments in the GPB Investments are the crux of their fraud claims. The fraud claims clearly arise in connection with Plaintiffs' entry into the Subscription Agreements. The unjust enrichment claim, in which Plaintiffs' allege the defendants defrauded Plaintiffs into investing, and unjustly used the funds invested to their own benefit, likewise arises in connection with Plaintiffs' entry into the Subscription Agreement.

Plaintiffs cite to *Credit Suisse Secs. (USA) LLC v. Hilliard*, 469 F. Supp. 2d 103, 107 (S.D.N.Y. 2007) for the proposition that a forum selection clause in one contract may not be applied to a separate agreement lacking such a clause, and argue that their claims arise out of the LPAs. Opp. Brief, at p. 47. In *Hillard*, the Court found that where the February 2005 contract

---

[2] References to "Opp. Brief" are to Plaintiffs' Omnibus Brief in Opposition to Defendants' Motions to Dismiss.

3

containing the forum selection clause had expired by the time the August 2005 contract upon which the plaintiff sued was executed, and the contracts were "separately negotiated," it would require too broad a reading of "arising out of" and "related to" to apply the forum selection clause to the August 2005 contract. Unlike *Hilliard*, this action does not involve separately negotiated contracts, but contracts which are inextricably intertwined.[3] In the Subscription Agreement (Bergenfeld Decl.[4] Ex. C and D, at p. 7), each investor stated as follows:

> By signing the Agreement, the undersigned subscriber (the "Subscriber") confirms acceptance of the Company's offer of Units on the terms and conditions set out in . . . the Company's Amended & Restated Agreement of Limited Partnership included in the memorandum, as it may be amended from time to time (the "LPA").

The Plaintiffs also agreed by virtue of the Subscription Agreement "to be admitted as an LP of the Company and to be bound by all of the terms and conditions of the LPA," which was provided to investors simultaneously with the Subscription Agreement. Bergenfeld Decl. Ex. C and D, page 7, 10, ¶ 19. Indeed, the Plaintiffs did not individually sign the LPAs (see Bergenfeld Decl. Ex. E, p. 51), but instead, pursuant to paragraph 26 of the Subscription Agreements, the Plaintiffs each agreed to irrevocably appoint GPB Capital as attorney-in-fact to enter into the LPA and all amendments or restatements of the LPA. Bergenfeld Decl. Ex. C and D, page 11, ¶ 26. Any rights Plaintiffs have under the LPAs derive from their execution of the Subscription Agreements. Thus, the forum selection clause applies to each of plaintiffs' claims stemming from their investments.

---

[3] *Agrotiki Viomichania Galaktos Ipirou Dodoni A.E. v. Fantis Foods, Inc.*, No. 14- CV-9179 (LAK), 2015 WL 1029651, at *3 (S.D.N.Y. Mar. 10, 2015)(cited at Opp. Brief, at p. 46-47) is likewise distinguishable. In *Agrotiki*, the Court found that the plaintiff's federal trademark infringement and counterfeiting claims were not within the scope of the forum selection clause where the "ownership of the marks does not originate in the contract" and the contract had a narrow forum selection clause covering disputes "arising from the enforcement and operation of this agreement." In this case, plaintiffs' ownership of the limited partnership interests originates in the Subscription Agreements, which have far a broader forum selection clause covering any dispute arising in connection with the Subscription Agreement.

[4] References to "Bergenfeld Decl." are to the Declaration of Jennifer Bergenfeld submitted in support of the GPB Defendants' motion to dismiss. (D.E. 60-1).

*Bluefire Wireless Inc. v. Cloud9 Mobile Commc'ns., Ltd, Inc.*, No. 09 Civ. 7268 (HB), 2009 WL 4907060, at *3 (S.D.N.Y. Dec. 21, 2009). Additionally, while claiming that their claims do not arise out of or are not "in connection with" the SPAs, the Plaintiffs purport to seek as relief for each of their claims "rescission" of the SPAs. Opp. Brief, at 38, 40, 43-44; Bergenfeld Decl. Ex B, p. 2.

Contrary to the Plaintiffs' assertion, the forum selection clause is mandatory and not permissive. Unlike a permissive forum clause which "only confers jurisdiction in the designated forum, but does not deny plaintiff his choice of forum, if jurisdiction there is otherwise appropriate," the forum selection clause here contains "obligatory venue language." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007).

Plaintiffs cite to *Presbyterian Healthcare Servs. v. Goldman, Sachs & Co.*, 122 F. Supp. 3d 1157, 1191 (D.N.M. 2015), a District of New Mexico case, quoting language that states mandatory language includes "such terms as 'exclusive,' 'sole,' or 'only.'" Opp. Brief at 49. However, Courts in this District have made clear that "exclusive jurisdiction can be granted to a forum without the use of specific language of exclusion (e.g., 'only', 'solely', or 'exclusively')." *See e.g., Baosteel Am., Inc. v. M/V Ocean Lord*, 257 F. Supp. 2d 687, 689 (S.D.N.Y. 2013).

In support of their assertion that the forum selection clause is permissive, Plaintiffs fail to cite to a single case with a forum clause similar to the one found in the Subscription Agreement. In fact, this Court and others have enforced as mandatory forum selection clauses providing that venue "will lie in" a specified forum. *Leasing Service Corp. v. Graham*, 646 F. Supp. 1410, 1415 (S.D.N.Y 1986)(enforcing forum selection clause in "leases specify[ing] that jurisdiction and venue will lie in New York"); *Kuhlman v. TDP Capital Access*, 2010 Mich. App. LEXIS 1361, *9, 2010 WL 2793565 (July 15, 2010) ("we find that the phrase 'will lie in,' as set forth in the contractual provision in this case, provides a mandatory provision and not a permissive one").

Plaintiffs' argument that the forum selection clause was not reasonably communicated is likewise without basis. As an initial matter, plaintiff Naylor concedes that the Subscription Agreement Terms and Conditions were received (Opp. Brief. at 53) and does not dispute that his spouse signed the Subscription Agreement; Naylor thus has no basis to claim that the forum selection clause was not reasonably communicated. With respect to plaintiff DeLuca, Plaintiffs attempt to call into question the authenticity of the Subscription Agreement attached as Exhibit C to the Bergenfeld Decl. based upon pure speculation, and DeLuca states she doesn't recall receiving the Terms and Conditions of the Subscription Agreement and has been unable to locate a copy of the form she signed in her files or emails. DeLuca Decl. ¶¶ 5-7. She admits that she recalls signing the form sent by her broker and "immediately sending it back to my broker by *FedEx*" and further concedes that it is her signature on the Subscription Agreement. DeLuca Decl. ¶¶ 5, 7.

Regardless of whether DeLuca claims to have not read the Subscription Agreement or remember its terms, "[i]t is basic contract law that a person who signs a contract is presumed to know its terms and consents to be bound, and that failure to read a contract is no excuse." *Philippe NYC I LLC v. Philippe W. Coast, LLC*, 2016 U.S. Dist. LEXIS 38513, *19, 2016 WL 1183669 (S.D.N.Y. Mar. 23, 2016) ("Defendants' contention that the forum selection clause was not reasonably communicated to Mr. Halley because he neither read it nor was informed of it when he signed the agreement . . . is meritless."); *see also Horvath v. Banco Comercial Portugues*, 2011 U.S. Dist. LEXIS 15865, *12-13, 2011 WL 666410 (S.D.N.Y. Feb. 15, 2011) *aff'd* 461 Fed. Appx. 61 (2d Cir. 2011) (the "fact that Plaintiff now alleges that he does not remember receiving a copy of the agreement does not mean the forum selection clause was not reasonably communicated to him").

Likewise, the fact that the Ascendant Capital Defendants were not party to and, therefore, did not sign the Subscription Agreements is of no consequence. The Ascendant Capital Defendants may nevertheless avail themselves of the forum selection clause under the "closely related" doctrine. *See Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013). The cases cited by Plaintiffs' confirm this fact. *See* Opp. Brief at pp. 51-52 (relying on *Magi XXI* and *Weingard v. Telepathy, Inc.*, No. 05 CIV. 2024 (MBM), 2005 WL 2990645 (S.D.N.Y. Nov. 7, 2005), both of which applied a forum selection clause to dismiss claims as to *all* defendants). Accordingly, the forum selection clause in the Subscription Agreements should be enforced as to the Ascendant Capital Defendants and the Complaint should be dismissed under the doctrine of *forum non conveniens*.

## II.     IN THE ALTERNATIVE, THE ACTION SHOULD BE STAYED

In the event the Court does not dismiss the Complaint based on the doctrine of *forum non conveniens*, the Court should exercise its discretion to stay this action in favor of the prior-filed state action entitled: *Younker v. GPB Capital Holdings, LLC, et al.,* Sup. Ct., N.Y. County, Index No. 15769/2019.

Plaintiffs' citation to *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 99 F. Supp. 3d 288, 314 (E.D.N.Y. 2015) (Opp. Brief, at p. 54), offers no support for their position. In that case, the Court declined to stay a federal action in favor of a parallel state court action which was in the settlement approval process. There, the Court found that there had been "nearly two years of extensive discovery and motion practice in federal Court," the risk of "duplicative discovery" was a "product of HSBC's own making," and there was little risk of waste of judicial resources given the near-completion of discovery. As a result, the Court determined that abstention was not warranted. Here, by contrast, the federal action is in its incipiency, and there is a considerable risk of duplicative discovery as well as waste of judicial resources.

Plaintiffs attempt to factually distinguish two cases cited in Defendants' moving briefs: *Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*, 2011 WL 1465744 (S.D.N.Y. Apr. 15, 2011) and *Rattner v. Bd. of Trustees of Vil. of Pleasantville*, 611 F. Supp. 648, 654 (S.D.N.Y. 1985), by arguing that Jeffrey Lash is not (yet) a party to the *Younker* action and by asserting that discovery has not started in *Younker*. Plaintiffs fail to address *De Cisneros v. Younger*, 871 F.2d 305, 309 (2d Cir. 1989), which, in applying the six-factor framework established by *Colorado River* and its progeny, based its determination to affirm abstention on the factor that considers "avoidance of piecemeal litigation." Finding that a real potential exists for "inconsistent and mutually contradictory determinations," the Court affirmed the district Court's decision to abstain from the exercise of its jurisdiction "where the bulk of the litigation would necessarily revolve around the state-law . . . rights of [numerous] . . . . parties," which is the case here. *De Cisneros*, 871 F.2d at 309. Similarly, in *First Keystone Consultants, Inc. v. Schlesinger Elec. Contrs.*, Inc., 862 F. Supp. 2d 170, 189 (E.D.N.Y. 2012), the Court, noting the paramount importance of the factor of "avoidance of piecemeal adjudication" and that the "risk of piecemeal adjudication is especially great where a party in one lawsuit is absent from the other," found this factor to weigh strongly in favor of abstention. *See also Arkwright-Boston Mfrs. Mut. Ins. Co. v. New York*, 762 F.2d 205, 211 (2d Cir. 1983) (" The existence of such concurrent proceedings creates the serious potential for spawning an unseemly and destructive race to see which forum can resolve the same issues first [which would be] prejudicial, to say the least, to the possibility of reasoned decision-making by either forum.").

Accordingly, "reasons of wise judicial administration favor abstention in this case in order to avoid duplicative simultaneous litigation." *De Cisneros*, 871 F.2d at 308 (internal citations omitted).

### III. THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

While the Court need not reach the merits of Plaintiffs' claims due to doctrine of *forum non conveniens*, nonetheless, each of Plaintiffs' claims must be dismissed under Rule 12(b)(6) for failure to a state a claim.

#### A. Plaintiffs Have Failed to State their Fraud Claims

Plaintiffs have failed to allege actionable misrepresentations or omissions by the Ascendant Capital Defendants upon which they relied to their detriment, mandating dismissal of the fraud claims (Counts I and II) as against the Ascendant Capital Defendants.

While attributing the purported misrepresentations to the various "PPMs," absent from the Complaint is any allegation that the plaintiffs read the PPMs, and particularly, the purported misstatements therein, or that they did in fact rely on these statements in deciding to invest in Automotive and Holdings II. *Modell's N.Y. v. Noodle Kidoodle*, 242 A.D.2d 248, 250 (1st Dep't 1997); *2470 Cadillac Resources, Inc. v DHL Express (USA), Inc.*, 84 A.D.3d 697, 698 (1st Dep't 2011) ("The fifth cause of action, for fraud, fails to allege that plaintiffs relied on any misrepresentations made by DHL."). Plaintiffs' failure to plead reliance is fatal to their fraud claims.

Additionally, the so-called misstatements in the PPMs are not actionable, as they constitute forward-looking statements of corporate optimism, mere puffery, or are the subject of explicit disclosures.

Plaintiffs' claim that the defendants misrepresented that distributions would be made based exclusively on cash flows from dealership operations is directly contradicted by the PPMs, which disclosed that special distributions involving return of capital could occur. Such disclosure precludes a finding that the PPMs made misstatements as to distributions. *See* Truitt Decl. Ex. 5,

9

pp. 12, 29;[5]  *In re Apple REITs Litig.*, 2013 WL 1386202 (E.D.N.Y. Apr. 3, 2013), *aff'd in part, vacated in part sub nom. Berger v. Apple REIT Ten, Inc.*, 563 Fed Appx 81 (2d Cir. 2014).

Plaintiffs' attempt to distinguish the *Apple REIT* case is misguided.  Plaintiffs' argue that, in *Apple REIT*, "the court found the only factual allegation supporting the plaintiffs' conclusory assertion that the defendants failed to follow their stated distribution policy was that the company regularly paid out 7-8% distributions."  *See* Opp. Brief at p. 31.  To the contrary, the District Court in *Apple REIT* examined a similar disclosure in a prospectus as is at issue herein.  In holding the disclosure not to be misleading, the Court rejected the plaintiff's argument that the defendants' "disclosure that they 'may from time to time distribute funds that include a return of capital' was misleading because, in fact, it was 'a certainty that distributions would always be sourced by funds other than operating income.'"  *In re Apple REITs Litig.*, 2013 WL 1386202.  Instead, the Court held that the disclosure that something "may" happen points to the likelihood of it happening, and did not constitute a misstatement  *Id.* (citing to *Wilson v. Merrill Lynch & Co.,* 671 F.3d 120, 133 (2d Cir. 2011) and *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 109 (2d Cir. 2012), which involved similar disclosures).  Similar to *Apple REIT* and *Anschutz Corp.*, the disclosures here preclude a finding that Plaintiffs were misled.

The alleged misrepresentations in the PPMs concerning the GPB Investments' planned strategy of acquiring Dealerships presenting attractive medium-to-long-term returns, and the representation that the GPB Investments were safe, "[s]ustainable" investments (Opp. Brief at p. 7-11) are forward-looking statements of corporate optimism, and were in no way guaranteed in the PPMs.  *Wang v. Bear Stearns Cos. LLC*, 14 F. Supp. 3d 537, 545 (S.D.N.Y. 2014) (surveying examples of mere optimistic statements found to not be actionable misrepresentations where

---

[5] References to "Truitt Decl." are to the Declaration of Alexander Truitt submitted in support of the Axiom's motion to dismiss. (D.E. 62-3).

speaker did not provide "guarantees or . . . specific statements of fact").  The statements as to GPB Capital's experience and the advantages of the equity fund model (Opp. Brief at p. 11-13) are likewise unactionable puffery.  *Kelly v. Jefferies Grp., Inc.*, No. 1:17-cv-2432, 2018 U.S. Dist. LEXIS 26090, *24 (S.D.N.Y. Feb. 15, 2018) (holding the following purported misrepresentations to be unactionable puffery: "Defendants recommended Palmaz as 'safe, low risk investment which would lead to significant profits for Plaintiff' and "Defendants represented that Palmaz were 'unrivaled experts in creating and selling state-of-the-art technology'").[6]

      Rather than containing guarantees, the PPMs contain disclosures as to the risks of the GPB Investments which go to the heart of the purported misrepresentations.  The PPMs specifically caution that distributions to limited partners could not be guaranteed. Truitt Decl. Ex. 4, p. 12, 48; Ex. 5, p. 4, 28.  The PPMs additionally disclose that GPB Capital cannot guarantee they will be able to successfully acquire automotive dealerships, which are subject to restrictions by manufacturers.  Truitt Decl. Ex. 4, pp. 37; Ex. 5, pp. 38.  While expressing optimistic statements as to the belief that the business plan would be sustainable and produce long-term and steady returns for limited partners, the PPMs contain detailed forward-looking statements and pages of disclosures concerning the risks inherent to the automotive industries and particularly to the investments, which had limited operating history. See Truitt Decl., Ex. 4, pp. 3, 9, 34-39, 44-46; Ex. 5, pp. 4, 7-8, 34-40, 46-51.

      With respect to Plaintiffs' allegations that the Defendants misrepresented that GPB's financial statements complied with GAAP (Opp. Brief, at p. 13), just as in *Stephenson v. PricewaterhouseCoopers, LLP*, 482 Fed. App'x 618, 623 (2d Cir. 2012), the very case cited by

---

[6] Moreover, Plaintiffs' claims that the one or more of the Defendants did not have experience in the automotive industry are contradicted by their own pleadings, which acknowledge that Lash, Dibre, and Rosenberg each owned and operated automotive dealerships prior to joining GPB Capital.  *See* Bergenfeld Decl., Ex. B, ¶14.

11

Plaintiffs (Opp. Brief, at p. 26), Plaintiffs have failed to pled the requisite fraudulent intent to deceive by the Ascendant Capital Defendants. Thus, the purported misrepresentations may not serve as a basis for Plaintiffs' fraud claims.

With respect to the fraud by omission claims, the law is clear, and Plaintiffs' acknowledge, that "an omission does not constitute fraud unless there is a fiduciary relationship between the parties." *Cobalt Partners, L.P. v GSC Capital Corp.*, 97 A.D.3d 35, 42 (1st Dep't 2012). Plaintiffs, asserting that general partners owe fiduciary duties to their limited partners, attempt to argue that "once Plaintiffs became Limited Partners, there was a fiduciary relationship between the parties." Opp. Brief at p. 35. In support of that statement, Plaintiffs inexplicably rely on *Elghanian v. Harvey*, 249 A.D.2d 206 (1st Dep't 1998), in which the Court found there was "no fiduciary relationship giving rise to a duty to speak." In making that determination, the Court stated that "the requisite relationship between the parties must have existed *prior* to the transaction from which the alleged wrong emanated, and not as a *result* of it." *Id.* at 206 (emphasis added); *see also Balanced Return Fund Ltd. v Royal Bank of Can.*, 138 A.D.3d 542, 542 (1st Dep't 2016). Thus, contrary to Plaintiffs' insinuation, they cannot claim to have a fiduciary relationship with the Ascendant Capital Defendants which came about as a result of the transaction on which they base their claim. As no fiduciary relationship has been alleged by the Plaintiffs with respect to the Ascendant Capital Defendants at the time of their investment, there was no duty to speak, and the fraud by omission claims must be dismissed.

Plaintiffs have failed to state actionable fraud claims as against the Ascendant Capital Defendants, and accordingly, those claims must be dismissed as against them.

B. **<u>Plaintiffs' Aiding and Abetting Claims Must be Dismissed</u>**

As Plaintiffs' concede, to establish liability for aiding and abetting fraud, Plaintiffs must show "(1) the existence of a fraud; (2)the defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292–93 (2d Cir. 2006) (internal quotation marks omitted). Under New York law, this requires a showing that the defendant had actual knowledge of the underlying wrongful conduct. *See In re Refco Inc. Sec. Litig.*, No. 08 CIV. 3065 JSR, 2012 WL 3126834, at *1 (S.D.N.Y. July 30, 2012), *aff'd sub nom. Krys v. Pigott*, 749 F.3d 117 (2d Cir. 2014). Moreover, any allegations regarding the Selling Defendants' actual knowledge of the alleged fraud (which are absent from the Complaint entirely) would need to meet the heightened pleading requirements of Rule 9(b). *Lerner*, 459 F.3d at 292–93. Plaintiffs have failed to meet these pleading standards with respect to any of the Selling Defendants, including Ascendant Capital.

Here, Plaintiffs have merely alleged that the "Selling Defendants acted with willful blindness or recklessness in offering the LP Units to investors and, as a result, is [sic] charged with constructive knowledge . . . ." Compl., ¶ 191. Plaintiffs attempt to bolster this insufficient pleading in their opposition papers by pointing to other allegations contained earlier in the complaint. *See* Opp. Brief at p. 36. These allegations either related to actions attributed to *all* defendants, or they relate to actions attributable to defendants other than the Selling Defendants. *Id.* As the Ascendant Capital Defendants established in their moving papers, this general form of group pleading is insufficient to satisfy the pleading requirement of a fraud claim that requires actual knowledge. *See Ramos v. Ramirez*, 31 A.D.3d 294, 295 (1st Dep't 2006) (improper group pleadings fail to establish that one defendant had knowledge of or may be charged with the conduct of another). In an attempt to avoid this fatal flaw, Plaintiffs cite to *In re BISYS Secs. Litig.*, 397 F. Supp. 2d 430, 438 (S.D.N.Y. 2005). But the *BISYS* opinion itself makes clear that group pleading is insufficient

13

to establish scienter.  *Id.* at 439-40 ("[group pleading] does not permit plaintiffs to presume the state of mind" as to each defendant); *see also Orlan v. Spongetech Delivery Sys., Inc., Sec. Litig.*, No. 10-CV-4093 DLI JMA, 2012 WL 1067975, at *11 (E.D.N.Y. Mar. 29, 2012) (distinguishing *BISYS* on similar grounds and requiring plaintiff to "plead scienter with specificity" as to each named defendant).

    Moreover, even if these allegations specifically related to each of the Selling Defendant specifically, these allegations would, at best, support an assertion that the Selling Defendants *should have known* of the alleged fraud, which would be insufficient to state a claim for aiding and abetting against the Selling Defendants.  *See VTech Holdings Ltd. v. PriceWaterhouseCoopers LLP,* 348 F. Supp. 2d 255, 269–70 (S.D.N.Y.2004); *accord Nat'l Westminster Bank v. Weksel,* 124 A.D.2d 144 (1987) (allegation that law firm had access to client's papers is not sufficient to plead actual knowledge); *Ryan v. Hunton & Williams,* No. 99 Civ. 5938, 2000 WL 1375265, at *9, 2000 U.S. Dist. LEXIS 13750, *26–*27 (E.D.N.Y. Sept. 20, 2000) (allegations of mere suspicions rather than actual knowledge of fraud is insufficient to state aiding and abetting claims).

    Accordingly, Plaintiffs' claim for aiding and abetting fraud should be dismissed as to the Selling Defendants, including Ascendant Capital.

### C. Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law

    Plaintiffs' unjust enrichment claim is based on the collection of purportedly unearned compensation fees by the defendants pursuant to an explicit term in the LPAs (Bergenfeld Decl. E, F, ¶ 3.13) that covers the exact fees Plaintiffs are referring to in their claim against the Ascendant Capital Defendants.  Plaintiffs attempt to sidestep the well-establish rule that the existence of a valid and enforceable contract precludes recovery under a theory of unjust enrichment by arguing that the Ascendant Capital Defendants are not parties to the Subscription Agreement and/or LPAs. *See* Opp. Brief at 40.  However, it is also well established under New York law that "the existence

of a valid and binding contract governing the subject matter at issue in a particular case *does* act to preclude a claim for unjust enrichment even against a third party non-signatory to the agreement." *Law Debenture v. Maverick Tube Corp.*, No. 06 CIV.14320(RJS), 2008 WL 4615896, at *12 (S.D.N.Y. Oct. 15, 2008), *aff'd sub nom. Law Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458 (2d Cir. 2010) (emphasis in original; collecting cases). Accordingly, Plaintiffs' unjust enrichment claims must be dismissed as to the Ascendant Capital Defendants as a matter of law since the subject matter of that claim is covered by a written contract.

## CONCLUSION

For the foregoing reasons and those set forth in the Ascendant Capital Defendants' moving memorandum, the Complaint should be dismissed as against the Ascendant Capital Defendants in its entirety.

Dated: New York, New York
       March 9, 2020

**MEISTER SEELIG & FEIN LLP**

By: /s/Richard J. Jancasz
    Jeffery Schreiber, Esq.
    Richard J. Jancasz, Esq.
125 Park Avenue, 7th Floor
New York, NY   10017
(212) 655-3500

*Attorneys for Jeffry Schneider and Ascendant Capital, LLC*